Churchill, &c. *vs.* Commonwealth.

APPEAL FROM SHELBY COUNTY COURT.

Judge MARSHALL delivered the opinion of the court.

1. An order of the county court directing the removal, by an individual, of a nuisance from the public square by the next term, is such a final order as an appeal lies from.

2. The statute of 1796, (1 *Stat. Law*, 128,) does not confine the right of appeal to cases in which the party claims an estate of inheritance or for life, but it is sufficient if the judgment relate to a freehold, which is satisfied if the judgment have any bearing upon a freehold. It lies in all cases determining or relating to a title or interest in land, asserted and involved in the proceeding.

3. The right of the county court to coerce the removal from, or prohibit the erection of obstructions upon the public square, is not judicial, but a mere incident to the right of controlling and protecting the public square—not a power to determine conflicting rights thereto, but is dependent alone on the statute, and confined to express grants of power and powers necessarily incident thereto.

4. The county court has the right to decide, as an individual, that in its opinion, a nuisance exists upon the public square, and make an order to that effect; but to direct an individual to remove it, transcends its power, and the individual has a right to test the power in the court of appeals.

5. The individual claiming the right to occupy a part of the public ground, by contract with the county court, rendered it peculiarly proper that the county court should not adjudicate in its own case.

The county court of Shelby county at its May term 1852, made a rule upon Churchill and Myers requiring them to show cause why they "keep a lumber yard, and are erecting a building" on the north-east corner of the public square in Shelbyville for private use, contrary to the statutes, &c., to the great annoyance of the public and especially of the owners of lots east and north-east of said square, and why said lumber and building should not be removed from said square? To this rule there was an immediate appearance; and the motion of the defendants to discharge the rule for want of jurisdiction in the court having been overruled, it was proved that the defendants were erecting a wooden building on the northeast corner of the public square, and had some lumber lying there, and several witnesses gave their opin-

Case stated and decision of the court.

CHURCHILL, &c.
vs.
COMMONWEALTH
ions *pro* and *con* as to the inconvenience and hazard
to ensue to the neighboring lots and buildings. The
defendants, however, relied mainly , upon a right to
make the use which they were making of the north-
east corner of the public square which they asserted
and attempted to establish under the authority of the
county court itself. But the court, after excluding a
portion of the evidence offered on this subject, made
a peremptory order that the defendants should remove
the building and lumber by the next term of the court,
and that the commonwealth recover her costs herein,
&c.

From this order the defendants appealed. And the
1. An order first question now presented is, whether this court
of the county can take jurisdiction of the case. The objection is,
court directing
the removal, by that the order is not final, and that if it be, it does not
an individual, relate to a franchise or freehold, and does not amount
of a nuisance
from the public to thirty pounds. (*Stat. Law*, 128.) With respect to
square by the the finality of the order we think there can be no
next term, is
such a final or- doubt. It is in effect an order or judgment that the
der as an appeal defendants abate the nuisance which they have
lies from.
erected. If the order is obeyed, nothing more remains
for the accomplishment of the entire end and object
of the proceeding. If it is not obeyed, still nothing
remains to be done, but for the court to compel obe-
dience if it can, or to effectuate the first order for
abating the nuisance, in such other mode as may be
within its power. The fact that time is given to the
defendants to perform the required act, is nothing dif-
ferent from what constantly occurs in decrees for spe-
cific performance, which are nevertheless deemed

Upon the other branch of the objection, we are of
2. The stat- opinion that the act of 1796, (*Stat. Law*, 128,) in pro-
ute of 1796, (1
*Stat. Law*, 128,) hibiting appeals unless "the judgment or decree
does not con- amounts to thirty pounds, or relates to a franchise or
fine the right of
appeal to cases freehold," did not intend by the use of the word "free-
in which the hold" to confine the appeal in cases affecting inter-
party claims an
estate of inher- ests in land, to those cases only in which the right to
itance or for
life, but it is a freehold estate—that is, to an estate of inheritance

or for life—may be directly in issue, and is determined one way or the other by the judgment. It only requires that the judgment relate to a freehold; which requisition might be satisfied, if the judgment have any bearing upon a freehold. And this would let in almost, if not quite, every judgment in which the right to the possession or enjoyment of land is involved, even if freehold be understood in its technical sense, as referring to an estate of inheritance or for life. For as the possession itself must affect the title, upholding and strengthening it if friendly, and impairing it if adverse, so every judgment operating upon the possession must in some degree affect or relate to the title. Hence a judgment upon a writ of forcible entry and detainer, though it involve the mere fact of possession without any question as to title, and a judgment in ejectment, though it involve merely the right of possession under a lease for years, without any contest as to the technical freehold estate, are held to be proper subjects of an appeal. The statute did not intend to lay the ground for any subtile distinctions, or for a nice inquiry into the degree or manner in which the judgment might affect or relate to a freehold or to the title to land. Its discriminations were intended to be broad and intelligible, and were made not arbitrarily and without reason, but for practical and beneficial purposes. At the date of the statute of 1796, the difference between the remedy by appeal and writ of error consisted mainly in the fact that by the appeal the operation of the judgment might be immediately suspended, and the condition and rights of the parties held in *statu quo* until they should be finally settled by the decision of this court; whereas, if a writ of error were resorted to, the judgment might often be executed before the writ could be made to operate as a supersedeas. Why then was the right of appeal from judgments relating to a freehold secured to the unsuccessful party? In view of the distinction just noticed between an appeal and a writ of error, the obvious answer is, that

CHURCHILL, &c.
vs.
COMMONWEALTH

sufficient if the judgment relate to a freehold, which is satisfied if the judgment have any bearing upon a freehold. It lies in all cases determining or relating to a title or interest in land, asserted and involved in the proceeding.

the main object of this exception in favor of judgments relating to a freehold, and in fact of all the exceptions to the prohibition against appeals, was to give to the party in possession of the thing or right in contest, the means of protecting his possession and retaining the enjoyment until the right could be finally decided. The exception now in question necessarily operates, and was intended to operate, in favor of the party in possession, though his interest in the land be less than a freehold, and though a freeholder be the successful claimant. And as the right of appeal is certainly not confined to technical freeholders, there is no reason to suppose that it was intended to be confined to cases in which one or the other of the parties is a freeholder, or in which a freehold estate comes directly in question. In feudal times, when an interest in land not amounting to a freehold was but little regarded and scarcely deemed worthy of any protection or notice by the law, this statute might have been construed as discriminating between freeholds and estates or interests less than freeholds. But such a discrimination would be at war not only with the spirit of modern times, but with the whole tenor of our own legislation, which favors and protects the possession, whatever may be the extent of the interest under which it is held. Then, as every judgment affecting the possession or right of enjoyment and use of land does more or less directly affect or relate to the title and even to the freehold title in or to the land, we are of opinion that under a proper construction of the statute, an appeal is allowed upon any and every judgment determining or relating to a title or interest in land asserted and involved in the proceeding. The term freehold is thus interpreted according to its common acceptation as equivalent to or synonymous with land.

In the present case, as it cannot be pretended that the county court has authority, as a judicial tribunal or otherwise, to inquire of nuisances erected on the lands of individuals, or of the state, or to direct the

abatement of nuisances either public or private, merely because they are such; it is only upon the ground of a special interest and authority in and over the public square, existing in or claimed by the county court, that any plausible argument can be made in favor of this proceeding, or of the jurisdiction which it implies. And it is under this interest and authority claimed by the court, that the defendants claim an interest in a portion of the public square, and the right to use it, as they have attempted to do, by the erection of a building upon it. On each side an interest or a right in the land is asserted. And as we cannot doubt that a judgment of any other tribunal, denying or establishing the right which the county court claims in and over the public square, would be the proper subject of an appeal as denying or establishing, and therefore relating to, either a freehold or a franchise, it seems to follow that its own judgment or order, founded upon and asserting, and to the extent of its power establishing the same right, must equally relate to a freehold or a franchise, and therefore must be equally the subject of appeal.

Assuming then that the case is properly before us for revision, we are next to inquire into the jurisdiction of the county court to institute this proceeding, and to make the order now brought before us. On this question, we are of opinion, that whatever right or power the county court has by its own act or will to direct or coerce the removal of nuisances or unauthorized erections or obstructions from the public square, or to forbid and prevent their being placed there, is not a judicial power, but that so far as it exists, it is a mere incident to the right of property, or to the right and duty of controlling and protecting the public square. In saying that the court has no judicial power on the subject, we mean that it has no power to decide upon conflicting rights or claims, and to render a judgment thereon. And we say this because their power is derived wholly from statutory enactments, and is only such as is expressly granted,

3. The right of the county court to coerce the removal from, or prohibit the erection of obstructions upon the public square, is not judicial, but a mere incident to the right of controlling and protecting the public square—is not a power to determine conflicting rights thereto, but is dependent alone on the statute, and confined to express grants of power, and powers necessarily incident thereto.

CHURCHILL, &c.  or is necessarily and properly incident to the granted
    vs.
COMMONWEALTH  powers; and the power of adjudicating upon conflict-
ing rights is not properly, and certainly not necessari-
ly, incident to any right of property or of supervision
and control or protection which the court has with
respect to the public square, nor is it given by any
statute.

If the county court has no property or title in the
public square, and no peculiar control or guardian-
ship over it, then it has no more right to remove or
prevent an obstruction or erection upon it than upon
the land of an individual. If it has such property or
control and guardianship, then, in virtue thereof and
as incidental to its rights in and authority over the
square, it may have the right to prevent or remove
unauthorized and illegal obstructions, just as an indi-
vidual owning land or having authority from the own-
er may have the same right. But in neither case does
this right either imply or confer judicial power. It is
true, that in all cases in which an individual has a
right to do a certain act in a particular state of case,
he judges or rather determines for himself in the first
instance whether the case exists in which he is au-
thorized to act. But he judges for himself alone and
not for the other party, who is therefore not bound by
his decision, but may upon his own judgment for him-
self refuse obedience to it, or by such means as the
law affords or permits resist its enforcement or ques-
tion its propriety. In the absence of any legislative
enactment conferring upon the county court judicial
cognizance over erections, obstructions, or other nui-
sances upon the public square, that is, unless it has
by statute the power of "hearing and determining"
such matters, (and we know of no such statute,) we
do not perceive that its right or power over such sub-
jects is essentially different from that of an individual
as just described, except that as the court declares its
determinations by orders upon the record, and exe-
cutes them through its ministerial agents, there is
more solemnity and more apparent authority in its

acts than in those of an individual   But although it has the name and form of a judicial tribunal, and is vested with a considerable portion of judicial power, it does not follow and is not true that all of its powers are judicial or may be exercised in the form of a judicial proceeding, or that by giving to them that form the court may, at its pleasure, assume judicial power, or give to its determinations and orders the conclusive effect of judgments.

The incidental right of the county court to determine for itself in the first instance that there is an unauthorized and illegal obstruction on the square, conceding it to exist, might be properly exercised by an order directing its ministerial officer to remove the obstruction.   But such order, though binding upon the officer, would not be binding upon a party claiming the right to erect and maintain the obstruction. And he might resort to the appropriate remedy of prevention or redress whereby the legality of the order, or of the act done under it, might be presented to a court of competent original jurisdiction for its determination.   But here the court has not merely directed its officer to remove the obstruction, leaving the party whose claim it denies, to his appropriate remedy for the assertion and adjudication of his right; it has made the order directly upon him, and if the order is valid and effectual, it is a final judgment against his right, and leaves him no other remedy but that of a reversal.   It is, therefore, an attempt to give to the exercise of such power as the court has upon the subject the form of a judicial proceeding and the effect of a judicial determination.   It is an attempt, therefore, to exercise judicial power in a case in which the court has no judicial power.   The fact that the party claimed a right derived by contract from the court itself, if it affects the question at all, renders it more improper that the court, as one of the parties, should have undertaken to adjudicate upon that claim.   And, upon the whole, we are of opinion that in trying the question of right, and in the final order thereon, the

*Churchill, &c.*
*vs.*
*Commonwealth*

4. The county court has the right to decide, as an individual, that in its opinion, a nuisance exists upon the public square, and make an order to that effect; but to direct an individual to remove it, transcends its power, and the individual has a right to test the power in the court of appeals.

5. The individual claiming the right to occupy a part of the public ground, by contract with the county court, rendered it peculiarly proper that the county court should not adjudicate in its own case.

court assumed a power and jurisdiction unwarranted by the laws, and the order, although void, may be reversed on appeal or writ of error. Under this view of the question of jurisdiction, we do not deem it proper to decide upon the claim of right set up by the defendants, or to notice the questions incidentally made in the trial, further than to say, that the claim set up by the defendants is clearly not a mere pretext to give the color of right to an obvious wrong; but that it is of such a character as seems to entitle them to a judicial investigation and decision, before they shall be deprived of the fruits of their labor expended apparently in good faith.

Wherefore the order of the county court is reversed, and the cause remanded with directions to discharge the rule.

*T. W. Brown*, and *J. M. & W. O. Bullock*, for appellants; *Harlan*, attorney general, for county court.